# IN THE UNITED STATES DISTRICT COURT FOR THE
# EASTERN DISTRICT OF OKLAHOMA

TAMMY R. SPAULDING,               )
                                  )
       Plaintiff,           )
                                  )
v.                                )     Case No. CIV-17-440-KEW
                                  )
COMMISSIONER OF THE SOCIAL        )
SECURITY ADMINISTRATION,          )
                                  )
       Defendant.           )

## OPINION AND ORDER

Plaintiff Tammy R. Spaulding (the "Claimant") requests judicial review of the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying Claimant's application for disability benefits under the Social Security Act. Claimant appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined that Claimant was not disabled. For the reasons discussed below, it is the finding of this Court that the Commissioner's decision should be and is REVERSED and the case REMANDED to Defendant for further proceedings.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment. . ." 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social

Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . ." 42 U.S.C. §423(d)(2)(A). Social Security regulations implement a five-step sequential process to evaluate a disability claim. *See*, 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires that the claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities. 20 C.F.R. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity (step one) or if the claimant's impairment is not medically severe (step two), disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to step four, where claimant must establish that he does not retain the residual functional capacity ("RFC") to perform his past relevant work. If the claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which the claimant – taking into account his age, education, work experience, and RFC – can perform. Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. *See generally,* Williams v. Bowen, 844 F.2d 748, 750-51 (10th Cir. 1988).

standards were applied. <u>Hawkins v. Chater</u>, 113 F.3d 1162, 1164 (10th Cir. 1997)(citation omitted). The term "substantial evidence" has been interpreted by the United States Supreme Court to require "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." <u>Richardson v. Perales</u>, 402 U.S. 389, 401 (1971) (quoting <u>Consolidated Edison Co. v. NLRB</u>, 305 U.S. 197, 229 (1938)). The court may not re-weigh the evidence nor substitute its discretion for that of the agency. <u>Casias v. Secretary of Health & Human Servs.</u>, 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the court must review the record as a whole, and the "substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." <u>Universal Camera Corp. v. NLRB</u>, 340 U.S. 474, 488 (1951); *see also*, <u>Casias</u>, 933 F.2d at 800-01.

## Claimant's Background

Claimant was 50 years old at the time of the ALJ's decision. Claimant obtained her GED. Claimant has worked in the past as a debt collector and phone sales person. Claimant alleges an inability to work beginning September 25, 2012 due to limitations resulting from cirrhosis of the liver, chronic hepatitis C, spinal problems, COPD, and neuropathy.

## Procedural History

On June 20, 2014, Claimant protectively filed for protectively filed for supplemental security income pursuant to Title XVI (42 U.S.C. § 1381, *et seq.*) of the Social Security Act. Claimant's application was denied initially and upon reconsideration. On May 3, 2016, the Administrative Law Judge ("ALJ") B.D. Crutchfield conducted an administrative hearing in Tulsa, Oklahoma and a supplemental hearing on October 12, 2016. On November 23, 2016, the ALJ entered an unfavorable decision. The Appeals Council denied review on September 27, 2017. As a result, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481.

### Decision of the Administrative Law Judge

The ALJ made her decision at step four of the sequential evaluation. She determined that while Claimant suffered from severe impairments, she did not meet a listing and retained the residual functional capacity ("RFC") to perform her past relevant work.

### Errors Alleged for Review

Claimant asserts the ALJ committed error in (1) failing to properly consider the medical evidence; and (2) failing to properly evaluating the evidence at steps four and five.

### Consideration of Medical Evidence

In her decision, the ALJ found Claimant suffered from the

4

severe impairments of major depressive disorder, posttraumatic stress disorder ("PTSD"), generalized anxiety disorder, cannabis use disorder in early remission, methamphetamine use disorder in early remission, oxycodone use disorder in early remission, morphine use disorder in early remission, degenerative disc disease, obesity, and status post right foot surgery. (Tr. 13). The ALJ determined Claimant retained the RFC to perform her past relevant work as a fast food worker. (Tr. 18). She also found Claimant retained the RFC to perform light work. In so doing, she found Claimant could lift/carry 20 pounds occasionally and ten pounds frequently. Claimant could sit for six hours out of an eight hour workday and could stand or walk for six hours out of an eight hour workday with normal breaks. She would probably have little difficulty understanding and carrying out simple instructions and would likely have mild to moderate difficulty with complex and detailed instructions. Claimant would be likely to have moderate difficulty with complex and detailed instructions. She would also likely have moderate difficulty concentrating and persisting through a normal workday and work week due to psychiatric symptoms. Claimant's ability to maintain a normal workday and work week without interruptions from her psychiatric symptoms was likely moderately impaired. The ALJ found that, in all likelihood, Claimant would have mild to moderate difficulty responding appropriately to co-

5

workers, supervisors, and the public. The ALJ concluded that the limitations appeared to be present when Claimant was sober. (Tr. 15).

After consultation with a vocational expert, the ALJ determined Claimant could perform her past relevant work as a fast food worker. Alternatively, the ALJ found Claimant could perform the representative jobs of sales attendant, bottling line attendant, and inspector/packer, all of which the ALJ found existed in sufficient numbers in the national economy. (Tr. 20). As a result, the ALJ concluded that Claimant was not under a disability since April 24, 2014, the date the application was filed. Id.

Claimant contends the ALJ erred in failing to consider the totality of the medical evidence. She references an MRI report authored by Dr. Brett H. Kolman that includes the following impression findings:

> Severe arthrosis/arthritis of the right L3-4 and L4-5 facets including extensive reactive subchondral edema like signal within the articular processes about the facets and extensive capsular/pericapsular edema/inflammation with associated myositis of the surrounding paraspinous musculature. No soft tissue abscess appreciated. Appearance is somewhat nonspecific, but favors an inflammatory arthritis. And infectious arthritis is a less likely possibility as there appears to be less prominent involvement of the left L3-4, L4-5, and L5-S1 facets as well.
>
> Inflammatory tissue surrounds of the exiting right L3 and L4 roots within their respective foramina.

Multilevel degenerative spondylosis as described.

Grade one degenerative spondylolisthesis at L4-5.

Moderate right foraminal stenosis at L4-5 with mild compression of the exiting right L4 root.

Small right parasagittal disc herniation at L5-S1 mildly compressing the right S1 root.

(Tr. 511).

The ALJ characterized the findings from this testing in her decision in stating "[i]n an MRI of the claimant's spine, while there was some arthritis found, the claimant only had mild degenerative disc dislocation at L1-L4." (Tr. 17).

In a similar vein, Claimant underwent a thoracic and cervical CT scan. The thoracic scan was largely unremarkable. (Tr. 601). The cervical CT scan found

> Straightening of the normal lordosis.
> Minimal retrolisthesis of C5 and C6.
> No acute cervical spinal fractures are identified.
> Multilevel degenerative changes.
> At C4-5, there are degenerative changes in the uncovertebral joints and there is mild disc bulging.
> There is mild narrowing of the spinal canal to approximately 0.9 cm in AP diameter.
> At C5-6, there are degenerative changes of the uncovertebral joints and there is a moderate to large central disc protrusion. There is moderate to severe narrowing of the spinal canal which measures 0.62 cm in AP diameter. There is severe right neural foraminal stenosis and moderate left neural foraminal stenosis.
> Atherosclerotic calcifications.

7

The resulting impression was "No acute cervical spinal fracture is identified. Degenerative changes. At C5-6, there are degenerative changes with a moderate to large central disc protrusion resulting in moderate to severe narrowing of the spinal canal." (Tr. 599). The ALJ stated in her decision that ". . . no acute cervical spine fractures or degenerative changes were noted." (Tr. 17).

The ALJ in these two important respects appears to have either failed to note the more serious aspects of this testing or was mistaken in her reading of the results. Either way, the correct reading of the reports could have substantially changed the functional limitations on Claimant's ability to work. The ALJ must correctly assess the evidence relied upon and discuss the uncontroverted evidence she chooses not to rely upon and any significantly probative evidence she rejects. Blea v. Barnhart, 466 F.3d 903, 915 (10th Cir. 2006). Of course, the first step in the analysis is to get a recitation of the evidence correct. On remand, the ALJ shall consider the totality of the testing results and explain her treatment of the condition in the RFC.

Claimant also challenges the ALJ's reference to her non-compliance, and the fact that the ALJ apparently cited to an incorrect entry in the record. This Court will not presume, as Claimant did, to identify the record to which the ALJ referred. On

remand, the ALJ shall correct any inaccurate reference to the record on this issue and explain whether the incident of non-compliance was a single occurrence or whether it represented an incident in a pattern of non-compliance.

Claimant also contends the ALJ failed to correctly assess her mental impairments, citing to the report of Dr. Brian Snyder. Dr. Snyder authored a mental source statement dated June 10, 2016 wherein he found Claimant had moderate limitations in the areas of understanding and remembering complex instructions, carrying out complex instructions, the ability to make judgments on complex work-related decisions, and interacting appropriately with the public, supervisors and co-workers. (Tr. 575-76). He wrote in narrative fashion that Claimant experienced "[d]ifficulty concentrating, problems thinking clearly, and difficulty making decisions." (Tr. 575). He also found Claimant suffered from "[a]nxiety around crowds & paranoia around others." (Tr. 576). He noted "[t]he limitations above appear to be present when the claimant is sober." (Tr. 575-76).

Although the ALJ gave Dr. Snyder's opinion "great weight" (Tr. 18), she stated Claimant only had mild difficulties in social functioning. (Tr. 14). The ALJ is required to consider all medical opinions, whether they come from a treating physician or

9

non-treating source.  Doyle v. Barnhart, 331 F.3d 758, 764 (10th Cir. 2003); 20 C.F.R. § 416.927(c).  He must provide specific, legitimate reasons for rejecting any such opinions.  The ALJ must also give consideration to several factors in weighing any medical opinion.  Id.; 20 C.F.R. § 416.927(d)(1)-(6).  Moreover, an ALJ "is not entitled to pick and choose through an uncontradicted medical opinion, taking only the parts that are favorable to a finding of nondisability."  Haga v. Astrue, 482 F.3d 1205, 1208 (10th Cir. 2007).  On remand, the ALJ shall explain the apparent discrepancy in evaluating Dr. Snyder's opinion and her findings of mental impairment, particularly in social functioning.

Claimant also urges this Court to require the ALJ to characterize an incident in which she ingested Morphine pills as a suicide attempt.  The evidence is conflicted on Claimant's intent in taking the pills.  The ALJ's conclusion was based upon a reasonable assessment of the evidence, including Claimant's denials.

Claimant challenges the ALJ's review of her obesity and the effects on her other conditions.  The ALJ states that she considered the effects of the condition and this Court will take her at her word.

### Step Four and Five Evaluation

Claimant states that the hypothetical questioning of the

vocational expert was faulty because her past relevant work as a fast food worker requires interaction with the public at a significant level. DOT #311.472-010. This requirement would appear to directly conflict with Dr. Snyder's mental health assessment. On remand, the ALJ shall re-evaluate Claimant's RFC and ability to perform her past relevant work on remand. She shall also re-evaluate the alternative representative jobs for the same requirement of interacting with the public and whether Claimant may perform that function.

## Conclusion

The decision of the Commissioner is not supported by substantial evidence and the correct legal standards were not applied. Therefore, this Court finds, in accordance with the fourth sentence of 42 U.S.C. § 405(g), the ruling of the Commissioner of Social Security Administration should be and is **REVERSED** and the case is **REMANDED** to Defendant for further proceedings consistent with this Opinion and Order.

IT IS SO ORDERED this 20th day of March, 2019.

_____
KIMBERLY E. WEST
UNITED STATES MAGISTRATE JUDGE